# THE NEW YORK AND NEW ENGLAND RAILROAD COMPANY vs. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

The charter of the B railroad company authorized it to purchase the franchise and property of the A railroad company. Held to be an implied authority to the latter company to sell, though there was no provision in its charter giving that power.

The charter of the B company provided that whenever a certificate under oath of that company and of the secretary of the A company should be filed in the office of the secretary of the state, showing that the A company had sold and the B company had purchased the franchise and property of the former company, the same should vest in the latter company as if originally granted to it. Held that, there being no requirement in the charter that the conveyance should be recorded in the land records of the towns, the conveyance was to be regarded as sufficient to pass the title for all purposes without such record.

Shortly afterwards the C railroad company located its road over land that had originally belonged to the A company and been used for its road, and which had passed to the B company under the sale above mentioned; but the officers of the C company had no knowledge of the sale and made the A company and the trustees for its bondholders the only respondents to their proceeding for condemning the land. Held

that the *B* company was the legal owner of the land and that the trustees as mortgagees were not such owners as made them the party to be notified.

Whether the filing of the certificate was to be regarded as constructive notice to the *C* company that the title had been conveyed to the *B* company : *Quœre.*

The trustees for the bondholders of the *A* company appeared upon the citation before the court and were heard as to the appointment of appraisers of the land taken and afterwards appeared before the appraisers and were heard on the question of damages. One of these trustees was president of the *B* company and charged by its by-laws with the general management of its affairs. He did not disclose the fact that the title was in the *B* company, and was in consultation with the attorney of that company with reference to his action. Held that his knowledge and action were the knowledge and action of the *B* company.

The line of the *C* company's road was not otherwise located by the company nor approved by the commissioners than by a center line with no statement of widths. Held to be fatally defective in itself.

But it appeared that there had been a previous understanding between the parties as to the location of the line, including widths and distances, and that in the award of damages the land taken was fully described. Held that the *B* company could not take advantage of the defect.

Where a corporation has forfeited its franchise, such forfeiture cannot be taken advantage of collaterally, but must be asserted by the state in a proceeding to establish it.

[Argued November 18th—decided December 29th, 1884.]

ACTION to recover possession of land and for damages, brought to the Superior Court in Hartford County. Facts found by a committee, and case reserved for advice. The points of law decided can be sufficiently understood from the opinion, without a statement of the facts, which would occupy much space.

*S. E. Baldwin*, for the plaintiffs.

*H. C. Robinson* and *F. L. Hungerford*, for the defendants.

BEARDSLEY, J.* The plaintiffs seek in this action to recover possession of a piece of land now occupied by the

---

* Judge BEARDSLEY of the Superior Court sat in this and all the remaining cases of the term, which were argued at an adjourned session of the court in November.

defendants as a part of their railway, and damages in the nature of mesne profits for such occupation. This land was formerly owned by the Hartford, Providence & Fishkill Railroad Company, from which both parties claim to have derived title—the plaintiffs by the lease and deed of August 28th, 1867, and the succeeding conveyances, and the defendants by proceedings for the condemnation of the land taken by the New Britain & Middletown Railroad Company, detailed in the finding, they having succeeded to such rights as that company acquired. It is claimed by the defendants that the Hartford, Providence & Fishkill Railroad Company had no power under their charter to make the lease and conveyance referred to, and hence that the Boston, Hartford & Erie Railroad Company acquired no title by them. The charter of the last named company fully authorized them to buy the property in question. There was no corresponding provision in the charter of the Hartford Providence & Fishkill Railroad Company authorizing them to sell, but the power given to the one company to buy necessarily involved the power of the other company to sell, and so operated impliedly as an enlargement of their charter. *Matter of Prospect Park* v. *Coney Island Railroad*, 67 N. York, 371, 377.

The defendants also claim that the lease and deed in question, if valid between the parties, were ineffectual against them, not having been recorded in the land records of New Britain, and hence that they, not knowing of these conveyances, properly proceeded against the Hartford, Providence & Fishkill Railroad Company for the appropriation of the land in question.

The charter of the Boston, Hartford & Erie Railroad Company provides that " whenever certificates under oath of the Boston, Hartford & Erie Railroad Company and the secretary of the other contracting corporation, shall be filed in the office of the secretary of the state, showing that said Boston, Hartford & Erie Railroad Company has purchased, and said other contracting party has sold, under the provisions of this act, their franchise, or the whole or

any part of their railway or railway property, then said Boston, Hartford & Erie Railroad Company shall become possessed of the property bargained, sold and conveyed; and all of the grants heretofore made or that may be made to said corporation making said sale, and transferred by the vote of said corporation, shall vest, be, and remain in and to said Boston, Hartford & Erie Railroad Company, as if originally granted to or obtained by them." 5 Private Laws, p. 543, § 4.

This provision, while it does not in terms dispense with the recording of the conveyances authorized by it, yet we think must be regarded as intending that the full title should pass for all purposes to the Boston, Hartford & Erie Railroad Company, when the certificate required by it should have been filed in the office of the secretary of the state. What the legislature contemplated by this and other provisions of the charter of that company, and what was effected by the conveyances, was a substantial merger of the Hartford, Providence & Fishkill Railroad Company in the new company. After that conveyance nothing was left of the old company but its bare corporate existence and its debts, and the latter were assumed by the new company.

It is obvious that the considerations of public policy, namely, the protection of creditors and subsequent purchasers, which underlie the provision requiring deeds of land to be recorded, have but a limited application to the conveyance by a railroad company of its entire interest in its real estate, which is ordinarily but an easement, and not liable to be levied upon by execution.

In analogous cases the legislature has unmistakably provided that certificates of a similar character, filed in the office of the secretary of the state, should dispense with the recording of deeds of conveyance, and indeed such seems to be the rule rather than the exception, in cases where railroad or other large landed corporations have been consolidated or merged. 4 Private Laws, p. 982; 5 id., pp. 205, 217; 6 id., p. 572.

The Boston, Hartford & Erie Railroad Company had therefore obtained by transfer from the Hartford, Providence & Fishkill Railroad Company the title to the land in question, at the time when the New Britain & Middletown Railroad Company instituted proceedings for its condemnation.

The latter company had no knowledge in fact of that transfer, and there seems to have been nothing to put them upon inquiry—no change of possession or management of the property, no information or suggestion in any form except by the certificate given to the public, and none of the ordinary incidents of a change of title. If therefore the officers of the New Britain & Middletown Railroad Company are to be charged with notice of the transfer it must be only the constructive notice given by the filing of the certificate. How far this should be held to be constructive notice it is not necessary for us to consider, since we are satisfied that the Hartford, Boston & Erie Railroad Company, through the acts of its president, is to be regarded as having waived formal notice of the proceedings and to have made itself a party to them. This point we will consider more particularly a little later.

It is true that superintendent Nott in his letters to president Burrall of May 4th, and August 19th, 1864, speaks of the Boston, Hartford & Erie Railroad Company's, having some interest, with the trustees and the Hartford, Providence & Fishkill Railroad Company, in the question of the location of the road of the New Britain & Middletown Railroad Company, but that language was rather adapted to mislead than to enlighten Mr. Burrall as to the nature of that interest.

Nothing more is suggested by these letters than that the one company had some interest in the stock or lien upon the assets of the other, or some contract relation to them which might create such interests, An inference that one company had conveyed to the other the land which was the subject of negotiation, and so had ceased to have any interest in it, was repelled by the terms of the letters.

Acting upon the assumption that the Hartford, Providence & Fishkill Railroad Company were the owners of the land in question, the New Britain & Middletown Railroad Company, made them, and the trustees for the bondholders of the former road, the only parties to their proceedings for the acquisition of title to it. The Boston, Hartford & Erie Railroad Company were in fact for the purpose of these proceeding the owners of the land, the interest of the mortgagees not being such as to entitle them to a hearing in the matter. *Whiting* v. *City of New Haven*, 45 Conn., 305.

But it is claimed on the part of the defendants that the Boston, Hartford & Erie Railroad Company, with full knowledge of the proceedings of the New Britain & Middletown Railroad Company, and of the mistake of that company respecting the title to this land, intentionally concealed from it its own title, and in effect became a party to these proceedings, and hence was estopped and concluded by them, as if it had been a party of record. We think, as we have already suggested, that this claim is well founded.

It is admitted that those proceedings were defective, and fatally so, by reason of there being no description of the location of the railroad over the land in question, in the vote of the directors establishing the location, and in the resolution of the railroad commissioners approving it, except by a center line, with no specification of distances on either side of it, unless those defects have been waived. It is found that the representatives of the Hartford, Providence & Fishkill Railroad Company and the trustees for its bondholders had agreed with the New Britain & Middletown Railroad Company as to the location of its line over the land in question, including widths and distances, when the center line of such location was approved by the commissioners; that afterwards, in answer to a citation, and presumably with knowledge of the defect in the record location, they appeared, and were heard as to the persons who should be appointed appraisers, and again appeared before the appraisers, and were fully heard upon the question of the damages to be awarded for taking the land in question,

making no objection on account of any defect in the prior proceedings, and that in the award of the appraisers the land taken was fully described.

If that company had been the owner of the land in question, it seems clear that it would be too late for them to complain of the irregularities referred to.

In the case of *Fitchburg R. R. Co.* v. *Boston & Maine R. R. Co.*, 3 Cushing, 77, SHAW, Ch. J., says:—"It is a most important principle in the administration of justice that in order to ensure regularity, and give litigant parties every opportunity to which they are entitled, objections to irregularities will be sustained if reasonably made—yet if the party entitled to such objections passes them by, and proceeds to the further consideration of the case, he shall be deemed thereby to have waived them; otherwise a party knowing of defects of form and technical exceptions not affecting the substantial merits of the case, may lie by and take his chance for a favorable judgment, with a purpose and power of defeating the judgment if it should be against him."

Did the Boston, Hartford & Erie Railroad Company have knowledge of these proceedings? It is claimed by the counsel for the plaintiffs that the knowledge of Mr. Bartholomew is not to be imputed to them, because he acquired it while acting as one of the trustees of the Hartford, Providence & Fishkill Railroad Company; and they cite the case of *Platt* v. *Birmingham Axle Co.*, 41 Conn., 255, in which it was held that the defendant corporation was not affected by the knowledge of its secretary, acquired by him while acting unofficially and in relation to his private business. But this case differs widely from that. Mr. Bartholomew was the president and superintendent of the Boston, Hartford & Erie Railroad Company, charged by its by-laws with the general superintendence of its agents and business, and required to devote so much of his time to his duties as should be necessary. He was thus made the general agent of the company. Upon familiar principles notice to him in relation to business matters affecting the

company, was notice to them, his action was their action, and his inaction was theirs also. As such agent he was in consultation with Mr. Graves, the authorized counsel of the company, regarding the location of the New Britain & Middletown railroad over the lands in question, both before and after the approval of the location by the commissioners, and the location was made under his authority and by his consent. The fact that Mr. Day, another of the trustees of the bondholders, never consented to this location, does not qualify the character or effect of the action of Mr. Bartholomew. The Boston, Hartford & Erie Company was a party interested, and indeed the only party legally interested in the question, and he must be presumed to be, and doubtless was, acting in their behalf, in authorizing and consenting to this location. The appraisal of damages necessarily followed, unless the parties in interest agreed as to the amount to be paid, and such appraisal must have been in the contemplation of the parties when the location was so made.

Mr. Bartholomew appeared and was heard relative to the persons to be appointed appraisers, and afterwards went before the appraisers, and labored to swell the damages to be paid for the land taken. He arranged with Mr. Graves to be present at the hearing as counsel for the Boston, Hartford & Erie Railroad Company, and that gentleman went from Boston to New Britain for that purpose, but left without appearing, as he had intended, upon further consultation with Mr. Bartholomew, and learning what arrangements had been made for the hearing. The award of the appraisers was made September 1st, 1865.

On the 31st day of October, 1865, the New Britain & Middletown Railroad Company took possession of the land, and on the 11th day of June, 1866, deposited with the treasurer of Hartford County the amount awarded to be paid, with interest, for the use of the Hartford, Providence & Fishkill Railroad Company, and notified that company of the deposit. A statute then in force required that payment of the damages awarded should be made within sixty

days after the matter had been finally determined, (Statutes, ed. 1854, p. 747, sec. 10,) but no claim was made by any person on account of the delay of payment, and the New Britain & Middletown Railroad Company, their successors, have remained in possession of the land up to the present time. In 1880 the successors of the Boston, Hartford & Erie Railroad Company first notified the defendants that they claimed the land in question.

Prior to the last named date the New Britain & Middletown Company and their successors, had expended considerable money in improving this land, and it was in use as a part of their railroad.

After the notice of the deposit made June 11th, 1865, was received, Mr. Bartholomew and Mr. Graves, in consultation, prepared the letters to Mr. Burrall, one dated July 3d, 1866, to be signed by Mr. Day, and the other dated July 9th, 1866, to be signed by the trustees. Both of these letters were written by Mr. Graves, but copied so as to conceal his authorship, Mr. Graves at the same time, in consultation with Mr. Bartholomew, saying that he would not allow the trustees for the bondholders to take the money deposited, and upon the theory they were acting upon it would not do for the Hartford, Providence & Fishkill Railroad Company to take it, and it might result in a bill in equity.

These facts, if we do not mistake their import, show that the Boston, Hartford & Erie Railroad Company was before the appraisers, by its representatives, contesting the matter of damages, and by concealing its presence there, and its title to the property in question, endeavoring so to shape its course as to avail itself of the award if satisfactory, and repudiate it if unsatisfactory.

It needs no citation of authorities to show that an experiment like this can meet with no favor in a court of justice.

In relation to the mere passive acquiescence of the owner of land who stands by and sees another purchase it from a third person, under the mistaken belief that he has the title to it, Chancellor KENT says :—" There is no principle better settled in this court, nor one founded on more solid consid-

erations of equity and public utility, than that which declares that where one knowingly, though he does it passively by looking on, suffers another to purchase and expend money upon land, under an erroneous opinion of title, without making known his claim, he shall not be permitted afterwards to assert his legal right against that person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel. *Qui tacet, consentire videtur. Qui potest et debet vetare jubet.*"

The cases are numerous where this principle has been illustrated and applied, both in courts of law and of equity, and many of them are cited in the brief of the counsel for the defendants.

It is claimed that if the Boston, Hartford & Erie Railroad Company are estopped by these proceedings, the state treasurer, the Berdell mortgagees and the assignees in bankruptcy, are not so estopped. By the statute as construed in the case of *Whiting* v. *City of New Haven*, before referred to, the owner of the equity of redemption is the only person to be made the party to proceedings of this character. He is the owner of the land and is alone entitled to be heard upon the questions involved in the proceedings.

Whatever may be the rights of the mortgagee in respect to the money which may be awarded as damages, they are to be settled between him and the mortgagor, and are not recognized by the statute which regulates the proceedings. It is not perceived upon what principle he can take advantage of irregularities which were waived by the owner, especially as the owner had all the substantial advantages of a hearing upon all the questions involved.

The plaintiffs also claim that all the rights and powers of the New Britain & Middletown Railroad Company expired by the limitations contained in its charter as amended, on the 25th day of June, 1865, and that therefore the appraisal proceedings which were not commenced until the following August were void. The provision of the charter relied upon by the plaintiffs is as follows:—" If said company shall not construct, complete and put in operation a single,

double, or treble railroad or way, as hereinbefore authorized, within two years after the rising of this General Assembly, then the rights, privileges and powers of said corporation shall be null and void." This was a part of the original charter granted in 1852. The period within which the road was to be completed was extended for two years in 1860, for two more in 1862, and for one more in 1864, the extension of the last year being the last one made. 4 Private Laws, p. 954; Private Acts of 1860, p. 97 ; of 1862, p. 96 ; and of 1864, p. 158.

It is somewhat doubtful upon the facts whether the company failed to comply with this requirement of the charter and so were subject to the forfeiture claimed ; but assuming that they did, we do not think that the plaintiffs can take advantage of it in this case, notwithstanding the unqualified language of the provision. The state and the Boston, Hartford & Erie Railroad Company were the parties to this charter, and this provision was placed there from considerations of public policy, and the forfeiture is to be asserted by the state, by proceedings to which the corporation is a party. In the case of *Pahquioque Bank* v. *Bethel Bank*, 36 Conn., 334, Judge BUTLER says:—" It is a well settled principle that a dissolution by forfeiture can only be effected by judicial proceedings against the corporation taken for that purpose, a hearing or an opportunity for a hearing had, and a judgment of forfeiture rendered thereon." The New Britain & Middletown Railroad Company and its successors have from year to year, since 1865, passed under the observation of the legislature, and it has, by accepting its reports and supervising its management by the railroad commissioners, given a construction to this provision in its charter, and recognized its continued existence.

Judgment is advised for the defendants.

In this opinion the other judges concurred.