THE NEW YORK, BRIDGEPORT AND EASTERN RAILWAY
COMPANY *vs.* JOSEPH MOTIL.

Third Judicial District, Bridgeport, October Term, 1908.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

A railroad company duly organized in 1881 under the then existing
   general railroad law (General Statutes, Rev. 1875, Part 9, Art. 1)
   had power to acquire, at least by agreement with its owner, a fee
   simple estate in land convenient for accomplishing the objects of
   its organization, as well as any lesser title or estate therein.

In the present case the deed of such a parcel of land purported to con-
   vey a fee, but described the premises as lying within the railroad
   company's location or right of way, and contained a clause re-
   quiring the company to trestle the grantor's pond. *Held* that
   these provisions did not limit or reduce the absolute estate other-
   wise conveyed by the deed.

The law under which the plaintiff was organized, provided that if it
   did not finish its road within five years from the time of filing and
   recording its articles of association, its corporate existence and

powers should cease. *Held* that the extinction of the plaintiff's right to build, while furnishing a ground of forfeiture for which the State might have proceeded against it, did not, *ipso facto*, destroy its corporate existence, nor did it extinguish its general right of property in the land in question.

A defect in the organization of a corporation does not prevent it from being a corporation *de facto*, nor disqualify it from acquiring, holding and conveying real estate.

An adjudication, on *quo warranto* proceedings, that a corporation had no legal existence after a certain date, does not destroy such rights of property as it then held. Its effect is to transfer the custody of the property of the supposed corporation from the directors, as such, to them as trustees for those interested in the succession, in order to satisfy such indebtedness as may exist and to transfer the balance, if any, to the stockholders pro rata.

What powers the directors, as such trustees, would have in the disposition of such property, in the absence of the appointment of a receiver, *quære.*

The continued existence of a company organized under the general railroad law was not affected by the repeal of that law in 1905.

Upon the failure of a private corporation to hold its regular annual meeting for the election of officers, those already in office hold over until the election of their successors.

Under authority given by the directors of a railroad company to its president to sell and convey all its property and pay its debts, the latter is impliedly authorized to institute a suit to determine the nature and validity of its title to land.

In the present case the trial court based its judgment on the sole ground that the land in question had been abandoned for railroad uses and apparently reached this conclusion because of its misconception of the nature of the interest which the company acquired under its deed in 1884. *Held* that inasmuch as this error lay at the foundation of the judgment, justice would be better promoted by granting a new trial of all the issues.

Submitted on briefs November 13th—decided December 18th, 1908.

ACTION under General Statutes, § 4053, to settle the title to a parcel of land, brought to the Court of Common Pleas in Fairfield County and heard before *Scott, J.;* judgment for defendant. *Error and new trial ordered.*

*John C. Chamberlain,* for the appellant (plaintiff).

*Stiles Judson,* for the appellee (defendant).

BALDWIN, C. J. This action is to settle the title to land conveyed in 1884 by one Hodges to the New York and Connecticut Air Line Railway Company, a corporation of Connecticut duly organized under the general railroad law in 1881, for the consideration of $626.32 then received in payment, by a warranty deed, in which he described it as "lying and being in the town of Stratford, and on each side of the center line of the location of said railroad company and of the width of four (4) rods on each side of said center line, across my said lands a distance of about nine hundred and nineteen feet in length, bounded northerly and southerly by my own land, easterly by land of Stiles W. Wheeler and westerly by highway, reference being had to the map of the location of said railway company in the office of the town clerk of said town of Stratford. Said railway company is to tressell my pond the width of fifty feet;" *habendum,* "unto the said grantees, their successors and assigns forever, to their own proper use and behoof." This strip ran through a sixteen-acre farm owned by Hodges, and was bought in order that it might become part of the road-bed of a railroad which the grantee was proposing to construct. The company acquired an entire right of way from New Haven to the State line of New York, surveyed it, graded a considerable part of it, and expended a considerable sum of money in advancing its purposes, but finally lost the right to complete the railroad by the expiration of the statutory period allowed for so doing, which occurred October 22d, 1889. On October 16th, 1889, some of its shareholders organized a new corporation, under the same law, named the New York, Bridgeport and Eastern Railway Company. The New York and Connecticut Air Line Railway Company thereupon conveyed all of its lands and right of way to one Wilfred E. Norton, trustee, who, on October 22d, 1889, conveyed the same to the new company. The organization of the latter was defective. On December 6th, 1890, it reconveyed whatever it had acquired under its deed of Octo-

ber 22d, 1889, to its grantor, and on January 24th, 1891, he conveyed the same premises to the plaintiff, which is a corporation of the same name with that defectively organized, and which was properly organized earlier in the month, under the same law, to carry on the building of the same railroad.

All these conveyances were made with the intention and for the purpose of using the land now in question as a part of the road-bed of a railroad. This strip had been graded and an earth embankment built on part of it, at considerable expense, by the first grantee. The plaintiff did no work upon it, but laid out a considerable sum in resurveys of its right of way, and in litigation. No trestle was ever built across the pond. In 1895 the directors of the plaintiff, being satisfied that it could not construct the railroad, empowered Henry R. Parrott, its president, as such, and as its attorney in fact, to dispose of and convey all its property, real and personal, using the proceeds to pay its indebtedness as far as possible. On January 6th, 1896, this action was ratified by the company at a meeting of the shareholders, the vote reciting that the rights of the corporation would expire on January 8th, 1896.

In 1889 Hodges had given a warranty deed of his farm to one Kowing and his wife, describing it as divided into two parts by a strip of land eight rods wide and about nine hundred and nineteen feet long, which he had conveyed to the New York and Connecticut Air Line Railway Company in 1884. In 1899 he gave a quitclaim deed of his right, title and interest in this strip to Mrs. Kowing, who had acquired her husband's title under the deed of the preceding year.

The strip in question was never separated from the farm by fences, and the successive owners of the farm have cultivated it to some extent.

An election of officers by the plaintiff was made in 1891, at which Henry R. Parrott, one of the shareholders, was chosen a director, and he was also then made president of

the company. No election of directors or appointment of president has been since made. He has always been a shareholder.

In the fall of 1895 he, claiming to act as president, director, and shareholder in the plaintiff's behalf and under the votes above described, had the strip of land in dispute mapped so as to show a pent-way extending through it, with adjoining building lots; caused fence-posts to be set up along its sides; and advertised the lots for sale. The farm would be greatly damaged by the use of this land for building purposes.

This action was instituted by Mr. Parrott in 1906, solely upon the authority of the votes above described.

The general railroad law under which the plaintiff was incorporated provided that if any company organized under its provisions should not finish its railroad within five years from the time of filing and recording its articles of association, its corporate existence and powers should cease. Rev. 1888, § 3440.

When Hodges gave his first deed, the general railroad law conferred upon all companies that should be organized under it power to "hold such real estate as may be convenient for accomplishing the objects of its organization" (Rev. 1875, p. 317, § 6); and there was an "Act concerning Corporations," providing that "every private corporation may, when no other provision is specially made, receive, purchase, hold, sell, and convey, real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in its charter." Public Acts of 1883, p. 232, Chap. 3. All these provisions of law continued in force until several years after the votes of the plaintiff's directors and shareholders. Rev. 1888, §§ 1906, 3438; Rev. 1902, §§ 3312, 3670.

It was unquestionably "convenient for accomplishing the objects of its organization" that the New York and Connecticut Air Line Railway Company should acquire

some title to the land in question at the time when it received the deed from Hodges in 1884.

It is unnecessary to inquire whether it had at this time the right to take this strip by condemnation proceedings, and whether that right would have included the power of appropriating a fee simple estate. It certainly had the right to acquire such an estate by agreement with the owner.

It paid him $626.32, and received a warranty deed, expressed in terms apt for conveying an absolute estate in fee simple, unless they are qualified by the fact that the premises were described as within the location of the company's railroad, or by the clause as to the trestling of a pond. That they were within the location, had no other effect than to make it clear that their acquisition was necessary. That the company was to trestle the pond, had no other effect than either to throw upon it a contractual duty, or to impose a condition subsequent upon the grant. In the common course of things, it could not build the trestle, which obviously was to be a part of its railroad structure, until it had acquired the estate. No forfeiture of the estate for breach of condition has ever been claimed, so far as appears, by Hodges or his heirs or assigns. He made no limitation in his deed of the uses to which the grantee could put the land. It was to be held by the company and "their successors and assigns forever, to their own proper use and behoof." The effect of these emphatic words is not reduced by the prior description of the premises as covered by the location of the railroad. A railroad company can acquire, by agreement with the owner, a fee-simple estate in land within its location, as well as it can acquire any lesser title to it. The extinction of the plaintiff's right to build its railroad, therefore, did not extinguish its general right of property in the disputed premises. It rather served to clear the title which could be conveyed to one desiring to purchase for the ordinary purposes of private occupancy. *Nye*

v. *Taunton Branch R. Co.*, 113 Mass. 277, 279; 5 Thomp. on Corp. § 5791.

The defect in the organization of the first corporation of the name since assumed by the plaintiff, did not prevent it from being a corporation *de facto*, nor disqualify it from acquiring, holding and conveying real estate. *Lamkin* v. *Baldwin & Lamkin Mfg. Co.*, 72 Conn. 57, 65, 43 Atl. 593, 1042; *Society Perun* v. *Cleveland*, 43 Ohio St. 481, 3 N. E. 357. It appears from a paragraph of the defendant's draft-finding marked *proven*, that in October, 1890, that corporation was adjudged, on *quo warranto* proceedings, to have no legal existence. This did not destroy such rights of property as it then held. A private corporation exists mainly for the benefit of its shareholders. For their convenience and protection they are allowed to assume a corporate name and become in law an artificial person. Whether the *quo warranto* proceedings were brought against the New York, Bridgeport and Eastern Railway Company, or its shareholders or directors is not stated. But in either case, those who had been claiming a right to exercise by that name a corporate franchise could do so no longer.

This, however, did not destroy all the property held by the supposed corporation, at the date of the judgment. It transferred its custody and changed its uses. The custody passed, under well settled equitable principles, from the directors acting as directors for a corporation *de facto*, to the directors acting as trustees for those interested in succession to what had been a corporation *de facto*. The uses for which they thereafter held it were to satisfy any indebtedness which might be due from the supposed corporation, and to transfer the balance, if any, to the shareholders pro rata. Such a liquidation of the corporate business would naturally require a sale of what had been the corporate assets. A receiver might have been appointed for that purpose. See *Wilcox* v. *Continental Life Ins. Co.*, 56 Conn. 468, 477, 16 Atl. 244. Whether, in the absence of

such an interference by the courts, the directors, as such trustees, could authorize a conveyance by a single shareholder and director, and if so, what form it should have assumed, and what effect acquiescence by those interested might have in curing irregularities, it is unnecessary now to inquire, since there must be a new trial on which the facts regarding the deed of December 6th, 1890 (stated in the finding to have been made by the corporation, and in a paragraph marked *proven,* in the defendant's draft-finding, to have been executed by Henry R. Parrott as its president), can be more fully ascertained. See 2 Morawetz on Pri. Corp. (2d Ed.) § 1032; *Saugatuck Bridge Co.* v. *Westport,* 39 Conn. 337, 350; *Sullivan County Railroad* v. *Connecticut River Lumber Co.,* 76 Conn. 464, 473, 57 Atl. 287.

The lapse of five years from its incorporation without the completion of its railroad, which occurred January 8th, 1896, did not, *ipso facto,* destroy the corporate existence of the plaintiff. This was simply a ground of forfeiture, and it does not appear that the State has instituted any proceedings to oust it of its franchise. It remains, therefore, a corporation *de jure. New York & N. E. R. Co.* v. *New York, N. H. & H. R. Co.,* 52 Conn. 274, 284. The repeal of the general railroad law, in 1905 (Public Acts of 1905, p. 335, Chap. 126), under which it was incorporated, did not affect or purport to affect the continued existence of any companies which had already been incorporated under its provisions.

When a private corporation fails to hold its regular annual meeting for the election of officers, those already occupying such a position hold over until their successors are elected. *McCall* v. *Byram Mfg. Co.,* 6 Conn. 428, 438; *Spencer* v. *Champion,* 9 id. 536, 542–544. Mr. Parrott, therefore, has been since 1891 continuously a director and president of the plaintiff company.

To enable him to sell any of its real estate to advantage, it would be necessary to satisfy any who might be consider-

ing its purchase that a good title could be conveyed. For this purpose such a suit as the present would be a proper mode of determining the nature of the company's title, and authority in Mr. Parrott for its institution was therefore fairly implied in the general terms by which the directors, in 1895, gave him such plenary powers as to the disposition of the estate.

The Court of Common Pleas dismissed the action on the ground that the plaintiff had no title, and did not pass on the claim of title made by the defendant. It came to this result because it found that the land had been permanently abandoned for railroad uses, and was of opinion that thereby the title conveyed in 1884 became extinguished. This error lies at the foundation of the judgment, and justice will be best promoted by a new trial as to all the issues.

There is error and a new trial is ordered.

In this opinion the other judges concurred.