FREDERICK M. BARROWS *vs.* THE NATCHAUG SILK COM-PANY.

First Judicial District, Hartford, March Term, 1900. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The stock of a corporation which is being wound up in insolvency is a trust fund for the payment of its debts; and any one who attempts to withdraw any part of that fund to the prejudice of creditors must show a clear right to do so or fail in his attempt.

The failure to make and file the certificate of increase of capital stock required by § 1954 of the General Statutes, is an irregularity, but does not make void the additional shares of stock actually issued.

One who retains shares of irregularly issued stock and for years receives dividends thereon, with knowledge, actual or constructive, of the circumstances under which the stock was issued, is estopped from setting up such irregularities when sued by the receiver of the insolvent corporation to recover a balance due upon his stock subscription.

A stockholder whose subscription is obtained by fraudulent representations, of which he has knowledge or the means of knowledge, must act promptly in rescinding his contract; otherwise he will be bound thereby.

Argued March 6th—decided April 4th, 1900.

APPLICATION by a creditor for the allowance of a claim against the defendant corporation in the hands of a receiver, brought to the Superior Court of Windham County and tried to the court, *Roraback, J.;* facts found and judgment ren-

dered disallowing the claim, and appeal by the applicant for alleged errors in the rulings of the court. *No error.*

Upon the plaintiff's complaint the Superior Court appointed a receiver for the Natchaug Silk Company, a corporation formed under the joint stock laws of this State. In the progress of the settlement of the affairs of that corporation, Chauncey G. Bevin presented a claim to the receiver and asked to have it allowed. It was for the amount he had paid to the corporation for certain shares of its capital stock, for which he had subscribed, and his contention now was that said shares were entirely void. The receiver disallowed the claim. The Superior Court sustained the decision of the receiver, and held that the shares were not void, and Mr. Bevin appealed.

The material part of the finding of facts is as follows : —

" The Natchaug Silk Company was organized under the joint stock laws of Connecticut, October 25th, 1887, with a capital stock of $25,000, 250 shares of $100 each, and continued in business until April 25th, 1895, when a receiver was appointed. Its stock remained the same until August 27th, 1888, when the stockholders voted to increase it to $200,000. No formal subscription paper was signed for this increase, but 1,600 shares thereof were taken by various persons, among whom was Bevin, who took fifty shares; paid therefor seventy-five per cent in cash, and gave his notes in suit for the remainder. On February 7th, 1893, the company voted to increase its capital stock to $25,000, but none of said additional stock was ever issued. No certificate of either increase of stock was ever filed with the secretary of State, or with the town clerk of Windham, in which town the corporation was located. In every year after Bevin bought said stock of the corporation, the proper officers thereof filed with the secretary of State and with the town clerk of said town, the annual certificate required by law, containing the names of the stockholders, and among them the name of the claimant, Bevin, and all of said certificates showed the amount of stock of the company actually paid in. All of the debts owed by the Natchaug Silk Company at the time of the appointment of the receiver,

amounting to more than $300,000, accrued after Bevin purchased his stock, and after certificates containing his name as a stockholder were filed in said town clerk's office.

"In the spring of 1889, the attention of Bevin was called to the stock of the Natchaug Silk Company as an investment, by his brother, A. A. Bevin, at the request of one Risley. On the 9th day of April, 1889, in pursuance of said request, the claimant Bevin called upon said Risley at Willimantic, when said Risley represented to him that the capital stock of said Natchaug Silk Company had been increased from $25,000 to $200,000; that the company was doing a prosperous business, and had a surplus of about $20,000; that the increase of $175,000 had been subscribed for, excepting thirty-five, or possibly seventy shares; and that seventy-five per cent thereof had been paid for in cash, and for the twenty-five per cent remainder thereof the subscribers had given notes, which the company took because it did not need the money, and these notes would be kept by the company and not used, and would be paid by dividends; that he, Risley, had taken $10,000 worth of said stock, and paid $7,500 in cash therefor and given his note for the remaining $2,500; that Bevin could have the thirty-five shares then, and in a few days he, Risley, would inform him whether he could have the other thirty-five. Relying on said representations said Bevin on April 9th, 1889, bought thirty-five shares of said stock, and on April 18th, 1889 (having in the meantime been informed by said Risley that the man who subscribed for the other thirty-five shares would not take them), he bought thirty-five shares more of said stock, paying therefor seventy-five per cent in cash and giving his notes for the remaining twenty-five per cent.

"In relation to the truth or falsity of said representations, I find as follows: That the voted increase of stock was never subscribed for in full, and that the entire stock of said company never exceeded $186,000. The increase of stock was sold from time to time from about August, 1888, to August, 1894. I am not able to find from the evidence whether the company was doing a profitable business in 1889, or had a surplus,

or not. It continued in business until April 1st, 1895, when a receiver was appointed. All the increased stock had not been subscribed for and seventy-five per cent thereof paid in cash on April 9th, 1889. The exact amount which had been subscribed for at the last-mentioned date I am not able to determine from the evidence, but it was much more than seventy shares taken by said Bevin, and much of that which had been sold at that time had been paid for in machinery and stock at an appraised value, instead of cash. So far as the books of the company showed, Risley was credited with having paid only $1,500 for stock taken by him.

" After Bevin received his certificates he attended several meetings of the stockholders, voted for its directors, and received semi-annual dividends at the rate of six per cent until about the time the company went into liquidation. During all that time he never made any examination of the books or papers of the company, or of its returns to the town clerk and secretary of State, to ascertain whether or not the representations made to him were true, or what the financial condition of the company was; or to see whether the stock had been properly and fully issued, in accordance with the votes of the company, as had been represented to him; although he could have made such examination and ascertained all the facts in relation thereto, as well before as after the failure. He made no attempt or effort in this direction until after demand had been made upon him by the receiver, about August 20th, 1895, when he agreed to pay the amount of said notes, but afterwards refused to do so.

" In September, 1895, Bevin presented a claim against the receiver of the Natchaug Silk Company for the cash paid by him for said stock, together with interest from the time of payment to the date of the appointment of the receiver thereof, less dividends received by him from said company on said stock, and at the same time returned the stock certificates. Said Bevin had no direct knowledge as to the issue of the stock in the manner hereinbefore set forth, or that the representations made to him were untrue, until after the appointment of the receiver."

The reasons of appeal are these:—

"1. The court should have held that upon the facts found the stock sold to said Bevin was spurious and void, and that Bevin's claim for the recovery of the amount paid therefor, with interest to the date of the appointment of a receiver, less the dividends paid to him by said company, should have been allowed. 2. The court erred in finding the sale of said stock to Bevin valid, and in disallowing his claim to recover the amount paid for said stock less the dividends paid him by said company. 3. The court erred in finding the sale of said stock to Bevin valid, and in disallowing his claim to recover the amount paid thereon with interest to the date of the appointment of a receiver, less the dividends paid to him by said company."

*William C. Case* and *Daniel A. Markham*, for the appellant (the claimant).

*Charles E. Perkins* and *Solomon Lucas*, for the appellee (the receiver).

ANDREWS, C. J. In this proceeding Mr. Bevin sought to take out of the assets of the Natchaug Silk Company the amount he paid for certain of its shares, upon the claim that the shares issued to him were issued under such circumstances that no obligation rests on him to pay for them. Indeed, his claim is that neither the corporation, nor its creditors represented by the receiver, have any demand against him therefor, but that on the contrary they are liable to him for the amount he paid for. the shares, less such dividends as he has received.

The stock of a corporation which is being wound up by insolvency proceedings is a trust fund for the payment of its debts. A person who attempts to take away any part of that fund and thereby to subject the creditors of the corporation to a loss, must show a clear right to do so or the attempt ought to fail. Mr. Bevin makes his claim upon two grounds: The first is that he was induced to take the shares by fraud; the other ground is that the shares were void.

To understand clearly the force of these claims it is desirable to recur briefly to some of the salient facts set forth by the court in its finding. The Silk Company was organized under and pursuant to the joint stock laws of this State. The organization was completed in October, 1887, when the notices and certificates required by law were all properly made and filed, so that the company was authorized to engage in business. Its capital stock amounted to $25,000, being 250 shares at $100 per share. The corporation at once commenced business, and apparently with success. In August, 1888, the stockholders at a meeting legally warned and held voted to increase the capital stock to $200,000. To do this required the issuing of 1,750 more shares of stock at $100 per share. The vote did not specify when and in what order these additional shares should be issued, nor was there any formal subscription paper signed for these new shares. Intending to act under this vote, the directors issued shares of stock to various persons from time to time and at different times between that date and 1895. They issued in all 1,600 shares, all of which were paid for. In the early part of April, 1889, fifty of these shares were issued to Mr. Bevin. He paid $3,750 in cash, and for the balance gave his two negotiable notes, each for the sum of $625. At that time the corporation was not indebted to any of its present creditors. Thereafter, Mr. Bevin attended the meeting of the stockholders and voted for its directors, and each year received dividends on his stock, semi-annually, at six per cent, until the receiver was appointed. All this time he had ample means, had he chosen to avail himself of them, to ascertain the truth or falsity of the statements which had been made to him respecting the business of the corporation and its management. No certificate showing the number and value of the shares of the authorized increase of stock was ever filed. The certificate required by § 1956 of the General Statutes was duly filed each year with the secretary of State and with the town clerk.

The sole ground on which these shares are said to be void is, that the certificate of the increase of stock, as required by

§ 1954 of the General Statutes, was not made and filed. This section requires that certificates shall be filed as is provided in the other section for original stock. The certificate prescribed by this section, as well as the certificates prescribed in the other sections in the same chapter of the statutes, are required to be made and filed with the secretary of the State and with the town clerk, primarily for the benefit of the public; that is, of those persons who may desire to do business with the corporation. *Johnston* v. *Allis*, 71 Conn. 207. Sections 1947 and 1948 (being in the same chapter) require that certain notices must be made and filed, as in the other sections above cited, before the corporation shall commence business. But there is nothing in any of these sections to show that the failure to file these notices, or any of them, makes the stock void. As between the shareholders and the corporation the shares, so far as this omission is concerned, may be good, and the shareholders be compelled to pay. These omissions are doubtless irregularities. The statutes, however, provide no penalty for them other than that the directors are made personally liable for all the debts of the corporation. Such irregularities do not exempt the subscriber after he has acted as a stockholder, as he did here, from paying for his stock. *Nutter* v. *Lexington & W. C. R. Co.*, 6 Gray, 85; *Naugatuck Water Co.* v. *Nichols*, 58 Conn. 403. The notices required by § 1956 have been each year made and filed since this increase was voted. These have furnished to the public full opportunity to learn the real condition of the Silk Company, as full and complete as the certificate named in § 1954 could have done.

It would have been entirely competent for the stockholders, when they voted the increase of stock in August, 1888, to have authorized the directors to issue the stock at such time or times and in such amounts as they should determine. It would have been wiser perhaps, if such authority had been specified in the vote. The directors have proceeded as though they had authority to sell the stock in this way, without such a vote. More than six years elapsed after the vote increasing the capital was passed, before the company became insolvent

All of this time the stockholders knew, or had every means of knowing, the way in which this stock was being issued and sold by the directors. As none of them, Mr. Bevin nor any of the others, have ever objected, he and they may be fairly held to have assented to the course the directors have taken. They have certainly acquiesced in this course, and it is now too late for any one of them to say that this stock was not lawfully issued. Such continued acquiescence is equivalent to a ratification; it binds the stockholder to the same extent that original authority by a vote would have done. *Whitney* v. *Wyman,* 101 U. S. 392, 397; *Railway Co.* v. *Allerton,* 18 Wall. 233, 236; *Stanton* v. *New York & E. Ry. Co.,* 59 Conn. 272. If Mr. Bevin ever had the right to question the validity of his shares of stock, even as against the corporation, we think the Superior Court might now fairly find that he had lost that right. *Derby* v. *Alling,* 40 Conn. 410, 436; *New York, N. H. & H. R. Co.* v. *New Haven,* 46 id. 257; *Roper* v. *Williams,* 1 Turn. & Rus. 18; *Sayers* v. *Collyer,* L. R. 28 Ch. Div. 103; *Knight* v. *Simmonds,* L. R. (1896) 2 Ch. 294.

Similar considerations are decisive against the right to set up Risley's fraudulent misrepresentations, upon which he claims he was induced to subscribe for the shares of stock. Assuming that such representations were established by the finding as the procuring cause of the subscription, Bevin was too late in setting them up. He should have availed himself earlier of his means of knowledge and been prompt in his rescission of the contract of subscription.

As against the creditors of the corporation for whom the receiver stands, it is entirely clear that Bevin has no just claim to the money he paid. *Northrop* v. *Bushnell,* 38 Conn. 498; *New Haven Wire Co. Cases,* 57 id. 352, 387; *Crandall* v. *Lincoln,* 52 id. 73.

There is no error.

In this opinion the other judges concurred.