WILLIAM K. BUTLER, RECEIVER, *vs.* CHARLES C. BEACH
ET AL.

First Judicial District, Hartford, October Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The corporation laws of this State (Public Acts of 1903, Chap. 194, §§ 63, 64) allow those forming a corporation to create more than one class of stock, provided the terms upon which each is issued are described in the certificate of incorporation, and also to insert therein "any lawful provisions" agreed upon by them "for the regulation of the business of the corporation or for defining and regulating the powers of the corporation, its officers, directors, and stockholders or any class of stockholders." *Held:—* .

1. That a provision in the certificate of incorporation of a grocery company, organized to succeed a grocery partnership, which in effect allowed the creditors of that partnership, who consented to take for their claims against it preferred stock in the new company, to trade out the par value of their stock, not exceeding $1,000 in any one year, for groceries purchased of the company, was a lawful one, and enforcible not only against the corporation but also against its receiver, who stood in its shoes with respect to its lawful contractual obligations previously assumed.

2. That the provision in question was not in violation of the prohibition against the purchase of its own stock by a corporation when insolvent (Public Acts of 1903, Chap. 194, § 11), since the company on its organization had no debts; while a subsequent acceptance of stock tendered in payment of groceries bought, although the company was then insolvent and in the hands of a receiver, was simply the fulfilment of a lawful obligation to which the company had irrevocably bound itself when solvent.

3. That inasmuch as the law conclusively presumed that all who dealt with the company had knowledge of what was contained in its certificate of incorporation, no reason existed for the application of the doctrine of equitable estoppel in favor of creditors.

4. That even if the company had been dissolved by judicial decree, its dissolution could not impair the substantial rights previously vested in the preferred stockholders, to apply their stock in payment for groceries purchased; and that if by reason of the dissolution it had become impossible to retire the stock in the manner originally contemplated, the stockholder might still obtain practical relief by a decree directing the receiver to refrain from collecting the debt which, by virtue of the tender of stock, had been equitably discharged.

The appointment of a receiver does not *ipso facto* dissolve the corporation. The shares of stock may still be transferred freely, and the stockholders may meet and take any action not inconsistent with the relations incident to the existence of the receivership.

Corporate action by the shareholders of a corporation cannot be taken after its dissolution, since that operates as an extinguishment of the corporate franchise.

Argued October 6th—decided December 17th, 1909.

ACTION by a receiver of an insolvent corporation to collect a debt due to it for goods sold, brought to the Superior Court in Hartford County. A cross-complaint was filed by Mary B. Beach, and both complaints found to be true by the court, *Bennett, J.* Judgment for plaintiff. *Error.*

*William BroSmith* and *Robert C. Dickenson,* for the appellants (defendants).

*J. Gilbert Calhoun* and *Edward W. Broder,* for the appellee (plaintiff).

BALDWIN, C. J. This suit is brought for the price of goods sold to the defendants by the insolvent corporation, Hills & Company, Incorporated, on and before April 24th, 1905. The receiver was appointed in May, 1905.

Hills & Company, Incorporated, was organized to succeed to the grocery business of Hills & Company, copartners. In November, 1903, this partnership owed the defendant Mary B. Beach, and James G. Batterson, about $19,000, to

recover which they sued the firm in July, 1904, and levied an attachment on goods and moneys amounting to more than the sum of the indebtedness. Subsequently they agreed with the firm and their creditors to accept one third of their claim in full payment. This the firm promised to pay, but afterward, at their request and that of their creditors, Mary B. Beach was induced to agree to accept, in lieu of her share of it, $2,000 in cash and $1,500 in preferred stock of a corporation which the creditors proposed to organize under the general incorporation laws of Connecticut. This agreement was conditioned on the insertion in the articles of association, the by-laws, and the certificates of preferred stock of the new corporation, of a provision for her special benefit and protection, that in case the holder of any shares of the preferred capital stock should be indebted to the company at the time of any regular annual stockholders' meeting for goods purchased, or in other manner, the company should, upon request, call in the stock of such stockholder at par to an amount not exceeding $1,000 in any one year to one stockholder, and not exceeding the amount of such indebtedness; and thereupon such stockholders should be released and discharged from such indebtedness to the amount of such stock so called in at its par value, and such stock might afterward be reissued and sold to other persons. This provision and the right to purchase goods of Hills & Company, Incorporated, and to discharge her liability therefor by the surrender of her preferred capital stock, were held out to Mary B. Beach by the creditors and said firm as an inducement to her to take the $1,500 of the preferred capital stock in lieu of money, in part payment of the percentage of her claim agreed upon in settlement.

Relying upon this inducement, the representations of the creditors and said firm in relation thereto, and the right to discharge any liability for goods purchased of Hills & Company, Incorporated, by procuring the calling in of her stock,

Mary B. Beach dismissed her action in the Superior Court, released her attachment lien and became a party to the organization of Hills & Company, Incorporated, and a stockholder therein to the extent of $1,500 of its preferred capital stock.

The creditors who made these representations and stipulations were, with few exceptions, the same who were creditors of the corporation when the receiver was appointed. In August, 1904, its organization was effected and the stipulations fulfilled; Mary B. Beach receiving the $2,000 in cash and $1,500 in the preferred stock.

Within the next few months she purchased groceries of Hills & Company, Incorporated, to the amount sued for by the receiver, which was less than $1,000; the creditors who are represented by him knowing that she bought on the faith of the special agreement that she could pay in shares of preferred stock, and that she would insist upon exercising that right, and but for that would not have made the purchase.

In July, 1905, at the regular annual meeting of the stockholders of Hills & Company, Incorporated, it did, upon her request, call in her preferred stock at par, to an amount not exceeding $1,000, in settlement and discharge of her indebtedness to it; and she then and there surrendered her stock to that amount.

Including the value of the groceries so bought, Mary B. Beach has received less than twenty-five per cent of her claim against the copartnership. The general creditors of the corporation (being with few exceptions the creditors who were parties to the special agreement with her) have been paid by the receiver dividends amounting to forty per cent of their claims.

In constituting such a corporation as that of which the plaintiff is a receiver, its promoters have the right to provide in the organization papers for more than one class of shares in its capital stock, provided "a description of the different

classes with the terms on which they are respectively created," be set forth in the certificate of incorporation, and this "may also contain any lawful provisions which the incorporators may choose to insert for the regulation of the business of the corporation or for defining and regulating the powers of the corporation, its officers, directors, and stockholders or any class of stockholders." Public Acts of 1903, p. 169, § 63, p. 170, § 64. Hills & Company, Incorporated, was organized upon the basis of having more than one class of shares, and a description of the terms on which the preferred stock was to be issued, including a provision for trading it out in purchases from the corporation by those who held it, was duly inserted in what the pleadings term the "articles of association," which we understand to mean the statutory certificate of incorporation.

This provision was a lawful one. The object of having a class of preferred shares is always to give a preference to those who hold them over other shareholders, but what this preference shall be it is, within reasonable limits, for the corporators to determine. That given in the present instance does not exceed such limits. It converted a creditor of the old concern into a stockholder in the new concern, with the privilege of trading out the amount of her stock, to the extent of $1,000, in buying groceries from it, before the next annual meeting of the corporation. Hills & Company, Incorporated, when it came into existence, received its franchise burdened by this condition in favor of its preferred shareholders. It had then contracted no debts of its own. It was therefore solvent, and the statutory provision that no corporation shall purchase any of its own stock when it is insolvent, or would by such purchase render itself immediately insolvent (Public Acts of 1903, p. 153, § 11), had no application to the feature of its organization papers now in question.

The defendant's right was conditioned on her request for the calling in of her stock at a regular annual meeting of the

company. She made such a request, and the company's compliance with it in July, 1905, was no violation of the statutory prohibition. True it was then insolvent, but it was simply doing what it had bound itself irrevocably to do when it was solvent.

There is nothing in the claim that the shareholders could hold no annual meeting, nor take such action, while the company was in the hands of a receiver. His appointment did not *ipso facto* dissolve the corporation. It remained, so far as the record discloses, in full life. The shares of its capital stock could be transferred from one to another as freely as before, and its shareholders could still meet and take any action not inconsistent with the relations incident to the existence of the receivership.

A receiver of a corporation stands in its shoes with respect to its lawful contractual obligations previously assumed. The obligation in favor of Mrs. Beach having been thus lawfully assumed, and binding the company to accept her shares of its preferred stock in payment for what she had bought of it, the vote of the shareholders passed at her request was a formality incident to the fulfilment of that obligation, and changed no real values. She was to pay for the groceries furnished her precisely in accordance with the terms of sale, and these terms were agreed to by all parties in interest when the company was solvent and had no creditors whatever. Her situation is not analogous to that of a subscriber to the stock of a corporation already organized and doing business, under an agreement that payment for it in part shall be accepted as payment in full. There, the corporation holds itself out to those who have no notice of the agreement, as possessed of a certain amount of capital, of which amount his stock counts as a part, at its par value. An equitable estoppel therefore may follow in favor of creditors. But here, the subscription on the terms in question was contemplated and authorized by the original organization papers, and the insertion in them of such

a provision was within the authority conferred by the general incorporation law. Of all that the certificate of incorporation contained it is conclusively presumed that all who dealt with it had knowledge. *Canfield* v. *Gregory,* 66 Conn. 9, 22, 33 Atl. 536. It is therefore unnecessary to consider whether the actual knowledge and assent of most of the creditors of Hills & Company, Incorporated, could affect Mrs. Beach's liability, as against a receiver who sues for the benefit of all of them.

This action was brought by the receiver against both Mrs. Mary B. Beach and her husband. The cross-complaint was filed by her alone. It alleged that the purchases from the corporation were made by her, and prays that the court (which is that in which the receivership suit is pending) will order the discontinuance of the action. The finding of the court is that both complaints are true. We understand this to import that Mrs. Beach made the purchases on her own credit. This being so, the relief asked in her cross-complaint should have been granted. She has paid for the goods precisely as it had been agreed by all who were parties in interest at the time that she might pay for them.

In the brief of the appellee there is an intimation that Hills & Company, Incorporated, was dissolved by a decree of the Superior Court on May 12th, 1905. No statement to that effect appears in the record, but we deem it proper to say that if such a judgment was entered, it could not impair the substantial rights previously vested in Mrs. Beach. It is true that a meeting of shareholders of a corporation, for the purpose of taking corporate action, can only be held by virtue of a corporate franchise, and that the franchise is extinguished whenever the corporation is dissolved. But the right of Mrs. Beach to pay for her purchases in shares of stock was in equity enforcible against the receiver of Hills & Company, Incorporated, as fully as against the corporation itself. If its dissolution made it impossible to retire her shares in the manner originally contemplated, it did

not render it impossible to attain the same object through invoking the equitable powers of the Superior Court to direct the receiver to refrain from attempting to collect a debt which had been equitably discharged.

There is error, the judgment is reversed, and the cause remanded with directions to dismiss the original action and grant the first claim for relief in the cross-complaint.

In this opinion the other judges concurred.