ANNETTE MITCHELL *vs.* MITCHELL, WOODBURY COMPANY
& others.

Suffolk.    November 18, 1927.— March 23, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Equity Jurisdiction,* To relieve from results of fraud, Trust.  *Trust.   Corporation,* Increase in capital stock, Issue of additional shares.

The widow of the owner of common stock in a corporation which he had
placed in the hands of trustees with stock of the other holders of the
majority of the stock under an agreement providing in part that, on his
death, it should be delivered to his widow, brought a suit in equity
against the trustees to set aside an exchange of the common stock for
preferred stock, made at her request after her husband's death.    A
judge found that the defendants had not at any time refused to transfer
the shares of common stock to the plaintiff; that they in no way in-
duced her to exchange the common stock for preferred, the exchange
being made solely at her suggestion; and that there was no fraud, col-
lusion nor coercion exercised on the part of the defendants with respect
to the transfer; that the common stock remained in the hands of the
trustees after a contest as to the husband's will as a matter of accom-
modation, the plaintiff at all times having confidence in a defendant
who held the certificate for her and receiving regularly from the trustees
checks representing dividend payments; that, after the authorization of
the preferred stock, the defendants at the request of the plaintiff made
the exchange described, and that thereafter the plaintiff accepted divi-
dends on the preferred stock.    *Held,* that the plaintiff was not entitled
to relief upon the ground of fraud, breach of trust, or other fiduciary
relation.

In February, 1920, the stockholders of a Massachusetts corporation voted
to increase its capital stock by the issue of preferred shares, "to be
issued when and as paid for in cash and at par to such persons and in
such amounts as may be subscribed for from time to time, and that the
remaining authorized capital stock unsubscribed for shall remain in
the treasury of the Company to be issued and disposed of as the directors
may hereafter determine and authorize."    A certificate containing a
copy of the articles of amendment was filed with and approved by the
commissioner of corporations and taxation, and on April 1, 1920, was
recorded by the Secretary of the Commonwealth; it also contained a
copy of the votes of stockholders, and a statement that the three thou-
sand five hundred shares of preferred stock were to be issued and paid for
in full in cash.    In 1924, without filing a new or amended certificate,
the directors voted to issue shares of the preferred stock in exchange
for shares of common stock, the vote was ratified by the stockholders,
and the exchange was made, the common stock at that time having a

liquidation value of $100 per share and the preferred stock being redeemable at $105 per share. *Held*, that

(1) The vote of the stockholders must be construed to mean that such part of the new stock as was not subscribed for in cash might be issued as the directors should thereafter determine;

(2) The vote of 1924 having been passed after the effective date of that part of G. L. c. 156, § 41, which gives stockholders power to authorize the board of directors to determine in whole or in part the terms and manner of disposition of an increase of capital stock, a contention, that the issue of preferred stock in exchange for common stock was invalid on the ground that it was not within the power of the stockholders to authorize the directors to make the issue, was without foundation;

(3) *It seems*, that such an issue without first filing a new or amended certificate was irregular;

(4) The requirement of G. L. c. 155, § 17, that no corporation shall issue a share for a less amount to be actually paid in thereon than the par value of the shares at the date of issue, was complied with.

There being no provision in the Massachusetts statute making void stock which has been issued for its full value in property when it should have been issued for cash, neither the corporation nor its officers having challenged the validity of the issue, and the plaintiff having received dividends on the preferred stock, the validity of its issues was not open to question in the suit above described.

BILL IN EQUITY, filed in the Superior Court on April 3, 1926, and described in the opinion.

The suit was heard by *Lourie*, J. Material facts found by the judge without a report of the evidence are stated in the opinion. By order of the judge a final decree was entered dismissing the bill. The plaintiff appealed.

*J. W. Morton*, for the plaintiff.

*E. O. Proctor*, for the defendants.

SANDERSON, J. The plaintiff, as the holder of a certificate purporting to represent three hundred and ninety-one shares of the preferred stock of the defendant corporation, brings this bill praying for the cancellation of the certificate and of her offer to exchange common for preferred stock and for the payment of money. The principal grounds on which she seeks relief are fraud of the individual defendants and the issuance to her of a void certificate of stock. From a decree dismissing the bill the plaintiff appealed.

The plaintiff's husband, Jacob Mitchell, died in 1922. He owned, with the defendants Stuart, Austin, and one other person, now deceased, a majority of the capital stock

of the defendant corporation. On February 5, 1920, for the purpose of maintaining control of the corporation, they entered into an agreement which provided that no one of them would sell his stock for ten years without the consent of the others, and that if any should die during that period his stock should be sold to and purchased in equal shares by the others.

Pursuant to an antenuptial arrangement, Mitchell, in July, 1920, transferred three hundred and ninety-one shares of common stock in that company to the defendants Stuart, Austin and Fahey, as trustees, to pay the dividends thereon to Jacob Mitchell during his life and upon his death to deliver the stock to the plaintiff.

The stock certificate in question remained in the hands of Stuart until July, 1924, and dividends thereon were paid to the trustees and indorsed by them to the plaintiff. In June, 1924, the plaintiff desired to exchange her common shares for preferred in order that her income might be increased, and at Stuart's suggestion she made a written application for the exchange, agreeing, upon acceptance of the offer, to "execute all papers necessary for transfer and delivery of the stock," and waiving her right to demand a purchase of the stock as set out in the agreement dated February 5, 1920. The directors voted to make the exchange and an acceptance of the plaintiff's offer was signed by Stuart for the corporation. In July, 1924, a certificate for three hundred and ninety-one shares of preferred stock was issued and delivered to the plaintiff by Stuart, for which she gave a receipt, and released and discharged the trustees under the declaration of trust of and from all claims, demands and liability, and ratified their action in assigning the common shares directly to the Mitchell, Woodbury Company in exchange for an original issue of three hundred and ninety-one shares of preferred stock. The certificate of common stock was properly indorsed and delivered to the corporation. At that time, as well as at the time of the death of Mitchell, the common stock had a liquidating value of $100 and was receiving a dividend of six per cent; the preferred was redeemable at $105, was receiving an eight per cent dividend

and was entitled to preference in liquidation. The plaintiff was paid dividends on the preferred stock to and including April, 1925; since then the corporation has had financial difficulties and paid no dividends. This suspension of dividends was due solely to financial trouble encountered by the corporation. At the time of the trial the common stock had been practically wiped out, leaving the preferred with a liquidating value of approximately $100 per share. Prior to beginning her suit the plaintiff made no demand for a return of the common stock and no complaint of any nature.

The trial judge found that the defendants had not at any time refused to transfer to the plaintiff the three hundred ninety-one shares of common stock; that they in no way induced her to exchange the common stock for preferred, the exchange being made solely at her suggestion; and that there was no fraud, collusion or coercion exercised on the part of the defendants with respect to the transfer. He also found that the stock remained in the hands of the trustees after the will contest as a matter of accommodation, the plaintiff at all times having confidence in Stuart and receiving regularly from the trustees checks representing dividend payments. Because of the findings, the plaintiff is not entitled to relief upon the ground of fraud, breach of trust, or other fiduciary relation.

But the plaintiff contends that she is entitled to recover $39,100 for the reason, among others, that the certificate for three hundred and ninety-one shares of preferred stock received by her is void because the shares were not issued for cash. On February 11, 1920, the stockholders voted to increase the capital stock by authorizing the issuance of three thousand five hundred shares of preferred stock at a par value of $100. They also voted "That the said additional shares of preferred shall be issued when and as paid for in cash and at par to such persons and in such amounts as may be subscribed for from time to time, and that the remaining authorized capital stock unsubscribed for shall remain in the treasury of the Company to be issued and disposed of as the directors may hereafter determine and authorize."

A certificate containing a copy of the articles of amendment was filed with and approved by the commissioner of corporations and taxation, and on April 1, 1920, was recorded by the Secretary of the Commonwealth. This certificate contained a copy of the votes of stockholders, and also a statement that the three thousand and five hundred shares of preferred stock were to be issued and paid for in full in cash. It was signed by the president, treasurer and clerk, constituting a majority of the directors.

The requirement that certificates like that in question be filed with the commissioner and recorded with the Secretary of the Commonwealth is for the benefit of the public. *Barrows* v. *Natchaug Silk Co.* 72 Conn. 658. The fundamental purpose of G. L. c. 156, §§ 10, 15, 44, is to prevent the issue of capital stock for less than par. *Loring* v. *Lamson & Hubbard Corp.* 249 Mass. 272. In *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, 420, 421, it was said that failure to comply with the provisions of G. L. c. 156, § 43, requiring the filing of articles of amendment with the Secretary of the Commonwealth, did not affect the rights and liabilities of the stockholders and the corporation as to each other on the facts there disclosed. The certificate to be filed should state the amount of additional stock to be issued for cash, property, services or expenses respectively, but the only duty imposed by statute upon the commissioner when such a certificate is filed is to decide whether the increased issue conforms to the law and, if it does, to indorse his approval thereon. G. L. c. 156, § 16.

The vote of the stockholders authorizing the issuance of preferred stock when and as paid for in cash in such amounts as may be subscribed for from time to time, and providing that the remaining authorized stock unsubscribed for shall remain in the treasury to be issued as the directors might thereafter determine and authorize, must be construed to mean that such part of the new stock as was not subscribed for in cash might be issued as the directors should thereafter determine. Unless it is so construed, the latter part of the vote is without meaning. The reason for the statement in the certificate filed that the whole of the new stock was to

be issued for cash, may have been that the original purpose of the new issue, as found by the judge, was to raise funds for the erection of a building. This plan, however, was abandoned and the majority of the new shares authorized remained unissued.

The part of G. L. c. 156, § 41, which gives stockholders power to authorize the board of directors to determine in whole or in part the terms and manner of disposition of an increase of capital stock was approved April 23, 1920. The vote of the stockholders in the case at bar giving the directors authority to dispose of such part of the new issue as was not subscribed for in cash was passed February 11, 1920. The vote of the directors that the preferred stock be issued to the plaintiff in exchange for her common stock was passed July 17, 1924, and their action was ratified by the stockholders in February, 1925. The plaintiff cannot successfully contend that the issue of stock to her on vote of the directors was invalid on the ground that it was not within the power of the stockholders to authorize the directors to issue the stock. But with the certificate on file, stating that all of the new stock was to be issued for cash, the issue of a part of the stock for property without first filing a new or amended certificate was irregular. It does not follow, however, that this irregularity made the issue of preferred stock to the plaintiff void.

In *Scovill* v. *Thayer*, 105 U. S. 143, 149, the court said that "a stockholder cannot set up informalities in the issue of stock which the corporation had the power to create." *Commissioner of Banks* v. *Tremont Trust Co.* 259 Mass. 162, 169. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 253 Mass. 205, 218. The Mitchell, Woodbury Company had the power to issue the new preferred stock, and the issuance of such stock was legally authorized. The only irregularity complained of is that the stock was issued in exchange for other stock when the certificate filed with the Secretary of the Commonwealth stated that it was to be issued for cash. In this Commonwealth, apart from special restrictions, stock may be issued for property, G. L. c. 156, § 15, and stock is property within the meaning of this statute. *Bellows*

*Falls Power Co.* v. *Commonwealth,* 222 Mass. 51, 57. *Commonwealth* v. *United States Worsted Co.* 220 Mass. 183. A corporation may buy its own stock or issue new stock for its own shares. *Dupee* v. *Boston Water Power Co.* 114 Mass. 37. *Leonard* v. *Draper,* 187 Mass. 536. *Commonwealth* v. *United States Worsted Co., supra.* Upon the findings the value of the stock given up by the plaintiff was equal to its par value, and the capital of the corporation was not depleted by the exchange. The preferred stock was issued for its full par value, although no cash was received for it. *Commonwealth* v. *Boston & Albany Railroad,* 142 Mass. 146, 155. *Rowell* v. *John Rowell & Sons, Ltd.* [1912] 2 Ch. 609. "No stock shall be at any time issued unless the cash, so far as due, or the property, services or expenses for which it was authorized to be issued, has been actually received or incurred by, or conveyed or rendered to, the corporation, or is in its possession as surplus." G. L. c. 156, §§ 16, 44. In a case relating to the enforcement in Massachusetts of the statutory liability of a stockholder in a corporation organized under the law of South Dakota, who had received shares of stock before they were paid for, the court said: "It may be that the State could institute proceedings to avoid such stock; but the parties cannot set up their failure to comply with the statutory requirements to escape the result of what they did when they had a right to do what they did by complying with the statute." *Bearse* v. *Mabie,* 198 Mass. 451, 456.

In the case at bar the requirement of G. L. c. 155, § 17, that no corporation shall issue a share for a less amount to be actually paid in thereon than the par value of the shares at the date of issue, was complied with. A remedy provided by statute if stock is issued in violation of G. L. c. 156, § 15, is that the president, treasurer and directors shall be jointly and severally liable for all·debts and contracts of the corporation contracted or entered into while they are officers thereof. G. L. c. 156, § 36. In *Olympia Theatres, Inc.* v. *Commonwealth,* 238 Mass. 374, the court held that a certificate filed by the officers of a corporation, containing statements as to the terms of disposing of a new issue of stock varying from

those stated in the stockholders' vote, had no bearing on the legal effect of that vote.    See *Abele* v. *S. A. Meagher Co.* 227 Mass. 427.

The statute relating to trust companies (G. L. c. 172, § 18) provides that no stock shall be issued by any such corporation until the par value thereof shall be fully paid in in cash.    But in *Commissioner of Banks* v. *Tremont Trust Co., supra*, notwithstanding this statutory provision, holders of stock not paid for in cash were held to be liable as stockholders after the commissioner of banks had taken possession of the property and business of the company.    There is no provision in the Massachusetts statute making void stock which has been issued for its full value in property when it should have been issued for cash and neither the corporation nor its officers have challenged the validity of the issue of preferred stock to the plaintiff.    It is generally held that mere irregularities in the action of the corporation on increasing its capital stock do not make the stock void, whether the question arises between creditors of the corporation and the stockholder or between the stockholder and the corporation itself, and it is apparent that there is a special reason for so holding if the stockholder has received dividends or otherwise asserted or enjoyed his rights as a stockholder. *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, 418. *Commissioner of Banks* v. *Cosmopolitan Trust Co., supra*, page 213.    *Commissioner of Banks* v. *Tremont Trust Co., supra*, pages 168, 172.    *Chubb* v. *Upton*, 95 U. S. 665.    *Handley* v. *Stutz*, 139 U. S. 417.    *Hoeft* v. *Kock*, 123 Mich. 171. *Man* v. *Boykin*, 79 S. C. 1.    *Barrows* v. *Natchaug Silk Co., supra*.

In *Cunningham* v. *Commissioner of Banks, supra*, at page 432, the court said: "The record shows, not a lack of corporate power to increase the capital stock, but irregularities in the performance of some of the statutory forms not affecting the essential rights of the trust company, its creditors, or the subscribers for the new stock in their relations to each other." The plaintiff has failed to prove that she holds a void certificate of stock and there is no valid ground for her contention that she is entitled to recover the par value of that stock from

the directors. No error appears in the refusal of the court to order the cancellation of her certificate for preferred stock or of her offer to exchange common for preferred stock, and she is not entitled to the equitable relief sought against any of the defendants.

The conclusion we have reached on the merits of the case makes it unnecessary to consider the defences of laches, multifariousness, the scope of relief which is open on the plaintiff's bill, or the effect on the individual defendants of the plaintiff's release from all claims and demands.

*Decree affirmed with costs.*