MAURICE J. GOLDMAN, TRUSTEE IN BANKRUPTCY OF THE ESTATE OF A. COPPOLA MOTOR SALES, INC. v. ANTHONY COPPOLA ET AL. (two cases)

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued December 7, 1961—decided February 6, 1962

*Joseph Weiner,* for the appellant (plaintiff) in each case.

*Irwin E. Friedman,* with whom were *Arthur Levy, Jr.,* and *Charles Weingarten,* for the appellees (defendants) in each case.

KING, J. The defendants, Donald and Anthony Coppola, were brothers. For some years prior to 1955, they had owned a corporation known as Dan's Auto Sales, Inc., which was engaged in the used-car business. In 1955, Anthony purchased the stock of Clare Motors, Inc., which held the Chrysler franchise in New Haven. The name of this corporation was changed to A. Coppola Motor Sales, Inc. There-

after, Dan's Auto Sales, Inc., was merged into A. Coppola Motor Sales, Inc. The details of these corporate maneuvers were complex and not all are clearly disclosed in the finding. At and after the merger, both brothers were stockholders in A. Coppola Motor Sales, Inc. The trial court accepted the defendants' claim that the motivation of some of these transactions was a desire to avoid paying a capital gains tax on a contemplated sale of a piece of real estate in Bridgeport.

A. Coppola Motor Sales, Inc., went into receivership on January 10, 1958, and on March 17, 1958, an involuntary petition in bankruptcy was filed. Adjudication followed on April 2, 1958, and the plaintiff was appointed the trustee in bankruptcy. He seeks to recover damages for which, on a number of grounds, he claims the defendants are liable. Two actions were instituted, each against both defendants. The actions were tried together, and the court filed a single memorandum of decision. It was stipulated that the appeals should be combined and that a single record should be printed. One action, hereinafter referred to as the first action, primarily sought recovery of damages from both defendants. The other, hereinafter referred to as the second action, primarily sought recovery of damages from Anthony Coppola, alone, and the apparent reason for joining Donald Coppola as a defendant was that the final (eighth) count sought to set aside a claimed fraudulent conveyance, by Anthony to Donald, of an undivided one-half interest in certain real estate in Stratford. A similar final (fourth) count in the first action sought the same equitable relief. It was stipulated at the trial that any judgment rendered against Anthony in either action could be satisfied out of this real es-

tate. This obviates the necessity of consideration of either of these counts on the partial retrial hereinafter ordered.

The first count in the first action included a claim based on Donald's transfers to A. Coppola Motor Sales, Inc., of stock in that corporation. This claim we consider first. On March 2, 1956, the records of the corporation indicate that Donald, then a director, donated to it 250 shares of its stock of the par value of $200 each. Subsequently, on December 31, 1956, a correcting entry was made in the corporate books in which the donation was treated as a sale to the corporation, by Donald, of 250 shares of its stock in return for a cancelation of approximately $50,000 of the total indebtedness owed the corporation by Donald and Anthony. On March 23, 1956, the corporate records recite a sale by Donald to the corporation of 250 shares of its stock in return for its cancelation of $50,000 of the total indebtedness then owed by Donald and Anthony to it. In October, 1957, Anthony consummated the sale of the balance of the stock in the corporation to a group of three persons and severed his connection with it. Previously, on January 22, 1957, Donald had resigned as a director.

The plaintiff attacked the court's finding that the minutes showing the donation of 250 shares of stock by Donald were written through ignorance and error, and that the correcting entry treating the transaction as a sale of stock to the corporation in return for the cancelation of indebtedness was a bona fide correction of an honest mistake. This presented a question of fact, and while there was strong evidence to the contrary, we cannot say that the court was not entitled to accept the defendants' claim of mistake with respect to this entry.

The plaintiff further claims that even if the correcting entry was bona fide, the two sales of stock, of 250 shares each, by Donald to the corporation were invalid for a number of reasons and seeks in effect to rescind or disaffirm the transactions and recover, on the return of the stock to Donald, the consideration given by the corporation for the stock. There is no claim by the defendants that their indebtedness to the corporation, which was surrendered by the corporation in return for its stock, would not have been collectible or was not worth its face value. One ground of invalidity relied on by the plaintiff and dispositive of this aspect of the appeal is the failure to comply with the statutory provisions requiring the filing of a certificate to set forth the purchase by the corporation of its stock.

Connecticut has certain statutory provisions regarding the purchase by a corporation of its own stock. These provisions were drastically changed (General Statutes § 33-358) by the Stock Corporations Act (General Statutes, c. 599) which took effect January 1, 1961, but the instant case is governed by our prior law, contained in § 33-63, repealed by Public Acts 1959, No. 618, § 137. One of the provisions of § 33-63 is that "[t]he president and treasurer of each corporation acquiring its own stock . . . shall, within six months thereafter, make, sign and swear to and file in the office of the secretary of the state a certificate stating the number of shares of its own stock so acquired, and the secretary shall thereupon record such certificate in a book kept by him for that purpose." It is undisputed that no such certificate covering either sale here was, or ever has been, made out or filed.

We have held that the purchase by a corporation of its own stock is ultra vires if the provisions of

§ 33-63 are not complied with. *Pothier* v. *Reid Air Spring Co.,* 103 Conn. 380, 389, 130 A. 383; *Martin Tire & Rubber Co.* v. *Kelley Tire & Rubber Co.,* 101 Conn. 534, 539, 126 A. 697. The defendants are forced to, and do, attempt to overthrow this rule. While admitting that the omission to file the certificate constituted an irregularity, they deny that it had any effect on the validity of the transactions or gave the plaintiff, as trustee in bankruptcy and the representative of creditors, any right of disaffirmance or rescission. They base this claim on the case of *Barrows* v. *Natchaug Silk Co.,* 72 Conn. 658, 663, 45 A. 951. That case does not support their position. Rather, it is an authority to the contrary. It makes clear that the purpose of a statutory provision requiring the filing of a certificate is "primarily for the benefit of the public; that is, of those persons who may desire to do business with the corporation." Id., 664. It also clearly recognizes that the equities of creditors are superior to those of stockholders where there is a failure to file the certificate required by statute. Id., 665; see *Butler* v. *Beach,* 82 Conn. 417, 423, 74 A. 748; *Canfield* v. *Gregory,* 66 Conn. 9, 22, 33 A. 536.

Nor is this all. The decision in the *Barrows* case, in 1900, antedated the enactment of chapter 157 of the Public Acts of 1901, which was a virtually complete new corporation law. After that decision, § 33-14 of the General Statutes was first enacted as § 34 of chapter 157 of the Public Acts of 1901, amended, in a manner immaterial to this aspect of the present controversy, by § 60 of chapter 194 of the Public Acts of 1903. Section 33-14 (repealed, Public Acts 1959, No. 618, § 137; see § 33-285) provides that "[e]ach certificate required to be filed by corporations . . . shall be signed and sworn to by

the persons required to file it, and shall be filed in the office of the secretary of the state, who shall examine the same, and, if he finds that it conforms to law . . . , shall endorse thereon the word 'Approved,' with his name and official title, and shall thereupon record such certificate in a book kept by him for that purpose. No act required to be set forth in any such certificate shall be valid until such certificate has been approved as aforesaid, but this provision shall not relieve the corporation, its officers, directors or stockholders from any liability which might otherwise be enforceable against them or any of them, or invalidate any of the stock of such corporation in the hands of bona fide holders without notice." Any possible doubt as to the effect of a failure to file a proper certificate as required by § 33-63 was removed by the enactment of § 33-14. Substantially the same claim as is made by the defendants here—that the failure to file a certificate was a mere irregularity of no real consequence to anyone—was advanced and rejected in *Taylor* v. *Lounsbury-Soule Co.*, 106 Conn. 41, 137 A. 159. It is unnecessary to repeat the detailed explanation given there (p. 54) of the scope of the decision in the *Barrows* case, supra, and (p. 55) of the reinforcement, by the legislative changes made subsequent to the *Barrows* case, of the principle that when a certificate setting forth a given corporate action is required to be filed, a failure to file it, in the absence of superior equities, renders the action at least voidable under the provisions of §§ 33-14 and 33-63.

The transactions attacked took place while the defendants, the attorney who represented them and the corporation, and Donald DiCarlo constituted all of the stockholders and the entire board of direc-

tors. The attorney was merely a nominal stockholder, holding a qualifying share of stock and the office of secretary. As previously noted, Donald Coppola continued to serve as a director until January 22, 1957. Anthony and the attorney continued as directors, with Anthony in active control, until October, 1957. The finding indicates that DiCarlo severed his connection with the corporation early in 1957. Thus neither of the defendants was in the position of a stockholder who had no connection with, or knowledge of, the internal management of the corporation, as was the case, for instance, in *Taylor* v. *Lounsbury-Soule Co.*, supra, 59. During and after the transactions under discussion, the defendants owned most, if not all, of the stock, were in control of the corporation and were its directors, and Anthony was the president and treasurer. Both defendants actively and knowingly participated in each transaction. See *Mills* v. *Tiffany's, Inc.*, 123 Conn. 631, 643, 198 A. 185. They were charged with knowledge of the requirement as to the filing of the certificates, and of course they could not avoid the consequences of a failure to comply with this obligation by the simple expedient of subsequently selling all of their stock to others. As against creditors, they cannot legally claim that they did not know that any certificate was required to be filed. *Crandall* v. *Lincoln*, 52 Conn. 73, 101. Between the defendants and the creditors represented by the plaintiff, the superior equities are clearly with the creditors. *Baldwin* v. *Wolff*, 82 Conn. 559, 562, 74 A. 948. It was the protection given creditors under the law which these defendants illegally failed to provide. *Canfield* v. *Gregory*, 66 Conn. 9, 22, 33 A. 536.

It is also unnecessary for the plaintiff to prove

that all the creditors he represents in fact relied on the absence of such a certificate in their dealings with the concern. They are presumed to have done so. Ibid. The plaintiff represents the creditors as a whole and must recover, if at all, for the benefit of the estate as a whole. He does not represent the special equities of any particular creditors, but the general equities of all. Ibid. There is nothing to indicate that all of the creditors represented by the plaintiff had actual knowledge of the facts which should have appeared in a proper certificate, and at least in the absence of such proof by the defendants, the plaintiff is entitled to maintain this action. See *Butler* v. *Beach,* 82 Conn. 417, 423, 74 A. 748; Bankruptcy Act § 70e (1), 52 Stat. 882, 11 U.S.C. § 110 (e) (1); 4 Collier, Bankruptcy (14th Ed.) pp. 1338, 1397, 1406. Whether, after recovery by the plaintiff, the rights of particular creditors in dividends in bankruptcy could be affected by equities arising from any knowledge of, or acquiescence in, the sales of stock to the corporation by Donald Coppola is a matter not before us. See 4 Collier, op. cit., pp. 1515, 1526; *Moore* v. *Bay,* 284 U.S. 4, 5, 52 S. Ct. 3, 76 L. Ed. 133; note, 76 A.L.R. 1200. Conversely, of course, had the certificates been filed, as they should have been, the creditors would have been charged with knowledge of the facts stated therein, whether in fact they had that knowledge or not. *Canfield* v. *Gregory,* supra; *Butler* v. *Beach,* supra.

The defendants make much of the fact that the corporation was not insolvent at the time of the transactions in question. The requirement as to the filing of the certificate is not limited to insolvent corporations or even to those with a capital impairment. Indeed, the same statute (§ 33-63) in terms

forbids the purchase by a corporation of its own stock when it is insolvent, or when it is rendered insolvent thereby. The filing of the certificate was required even though the corporation was solvent at the time. *Taylor* v. *Lounsbury-Soule Co.,* 106 Conn. 41, 57, 137 A. 159; *Pothier* v. *Reid Air Spring Co.,* 103 Conn. 380, 383, 389, 130 A. 383; see *Barrows* v. *Natchaug Silk Co.,* 72 Conn. 658, 660, 45 A. 951.

The effect of §§ 33-14 and 33-63, taken together, was to allow six months from the date of each sale in which to file an appropriate certificate. If such a certificate had been filed within the six-month period it would have related back to the date of the sale of the stock to the corporation, in much the same way as a deed recorded within a reasonable time relates back to the date of its execution. See cases such as *Hartford Building & Loan Assn.* v. *Goldreyer,* 71 Conn. 95, 100, 41 A. 659. Since no certificate was ever filed, we need not determine whether, had a proper certificate been filed after the expiration of the six-month period, it would have shut off the rights of creditors who became creditors only after the late filing, on the theory that they would have been charged with knowledge of the contents of the certificate. Nor are we concerned with any question of the Statute of Limitations, since quite properly it was not pleaded. The date of adjudication in bankruptcy was April 2, 1958, long before the running of the state Statute of Limitations, either in contract or in tort (§§ 52-576, 52-577), and the time within which the plaintiff might institute this suit for rescission was automatically extended for at least two years from that date. Bankruptcy Act § 11e, 52 Stat. 849, 11 U.S.C. § 29(e); 1 Collier, Bankruptcy (14th Ed.) p. 1198;

4 Collier, op. cit., p. 1735; see *Arrigoni* v. *Adorno,*
129 Conn. 673, 681, 31 A.2d 32; *Hitchcock* v. *Union
& New Haven Trust Co.,* 134 Conn. 246, 259, 56
A.2d 655.

The creditors have neither done nor refrained
from doing anything—to the prejudice of the de-
fendants—from which any equitable estoppel could
arise.  The creditors were under no duty to anti-
cipate that the defendants would either disregard
or ignore the law.  As already pointed out, the
equities are with the creditors, and the plaintiff
stands in their shoes.  Bankruptcy Act § 70e, 52
Stat. 882, 11 U.S.C. § 110(e).  The plaintiff is en-
titled to disaffirm or rescind the purported sales,
and to recover the consideration given by the cor-
poration for the stock.  Since this consideration
consisted of a release of indebtedness owed to the
corporation, the plaintiff is entitled to collect the
indebtedness, as he would be entitled to collect any
other indebtedness forming an asset of the corpora-
tion.  The court was in error in holding otherwise.
*Taylor* v. *Lounsbury-Soule Co.,* supra, 53; 4 Collier,
op. cit., p. 1731.

It is not clear from the finding what items or
amounts of indebtedness of the defendants to the
corporation were canceled in payment for the pur-
chase by the corporation of its own stock from
Donald on March 2 and March 23, 1956.  At one
point, the court seems to have found that the total
indebtedness canceled was about $100,000.  Other
findings seem to make this total somewhat less. The
court should have found the nature and amount of
the canceled indebtedness on the occasion of each
sale.  In the absence of such a finding, we must
remand the case on this issue for further proceed-
ings for the ascertainment of the nature and amount

of the indebtedness of the defendants which was canceled in return for the 500 shares of stock. Interest on that amount should be allowed in accordance with the demands of justice rather than through the application of an arbitrary rule. *Lewin & Sons, Inc.* v. *Herman,* 143 Conn. 146, 151, 120 A.2d 423, and cases cited therein. This principle would require the allowance of interest at least from the date of demand by the plaintiff, which was July 31, 1958, since at this time, if not earlier, the defendants knew that this claim would be made against them. General Statutes § 37-3; *Lowndes* v. *City National Bank,* 82 Conn. 8, 23, 72 A. 150; *Northrop* v. *Graves,* 19 Conn. 548, 561.

The plaintiff also asks damages on various other grounds. Unpaid loans from the corporation to Anthony are alleged. An $18,000 claim is based on delivery of ninety shares of stock in the corporation to DiCarlo, to be paid for by Anthony. While the evidence to the contrary was strong, the court was privileged to find, as it did on the conflicting evidence, that this stock was in fact not finally purchased by Anthony for DiCarlo but was ultimately returned to the corporation, after the proposed sale of a half interest in the corporation to DiCarlo fell through. The judgment for the defendants on this claim of $18,000, which appears in the fourth count of the complaint in the second action, should therefore stand.

The finding is too inadequate to enable us to determine the validity of any of the other claims for damages. The plaintiff is entitled to recover, as an asset for the creditors, any indebtedness owed to the corporation by the defendants, regardless of whether at the inception of the indebtedness the corporation was solvent or insolvent. We are unable to

add to the finding such material in the draft finding as probably should have been included in the finding, since such additions would have to be made largely on the basis of corporate records which were in the form of exhibits. These exhibits were lacking in both clarity and consistency, and in general the court failed to include in its finding such portions of them, if any, as it found accurate. Such a finding should have been made under the rule of cases such as *Pilon* v. *Yard,* 147 Conn. 720, 721, 158 A.2d 738; *Karen* v. *East Haddam,* 146 Conn. 720, 725, 155 A.2d 921; and *Goldblatt* v. *Ferrigno,* 138 Conn. 39, 41, 82 A.2d 152.

A further difficulty is presented by the fact that at least some of the items claimed, arising from money loaned the defendants by the corporation, may have been embraced in the indebtedness which was canceled by the corporation in return for Donald's stock. What this indebtedness was, as already pointed out, the finding fails to make clear. It cannot be determined, until the items comprising the canceled indebtedness are ascertained, whether it did or did not include some one or more of these other items of claimed indebtedness. If the dates of these other items as alleged in the complaint are correct, and the finding does not disclose this, it would appear that all but two arose after the cancelations of March 2 and March 23, 1956, and therefore could not have been included in them. As to these claims, the subordinate facts are wholly inadequate to support, justify or explain the judgments for the defendants as rendered, except for the single issue hereinbefore referred to. The court's preoccupation with the question of the solvency of the corporation was a basic error which lay at the foundation of its judgments and even permeated its finding. Under

the circumstances, justice requires further proceedings except as to the fourth count in the complaint in the second action. Practice Book § 396; *State* v. *Hartford Accident & Indemnity Co.*, 136 Conn. 157, 169, 70 A.2d 109; *New York, B. & E. Ry. Co.* v. *Motil*, 81 Conn. 466, 474, 71 A. 563; Maltbie, Conn. App. Proc., p. 443.

There is error in part in both cases. The judgment in the first case (No. 88105) is set aside and a new trial is ordered; so far, however, as the cause of action in the first count upon the debts of the defendants which were canceled in exchange for the transfer of stock is concerned, the new trial shall be restricted to the determination of the amounts of the canceled debts; if, upon the retrial, the amounts of those debts are established, the new judgment shall include an award in favor of the plaintiff against each defendant for the amount, with interest, of the aggregate of all canceled indebtedness separately owed the corporation by him, and an award in favor of the plaintiff against both defendants for the aggregate of all canceled indebtedness jointly owed the corporation by both. In the second case (No. 88102), the judgment is affirmed as regards the fourth count but is set aside as to the other counts, and as to them a new trial is ordered.

In this opinion the other judges concurred.